UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID WORTHY,

           Plaintiff,         Civil Action No.: 18-12451
                                Honorable Laurie J. Michelson
v.                           Magistrate Judge Elizabeth A. Stafford

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

           Defendants.
_____/

**REPORT AND RECOMMENDATION GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 39]**

### I.    INTRODUCTION

David Worthy, a *pro se* plaintiff, brought this action under 42 U.S.C. § 1983, alleging that Defendants Corizon Health, Inc. and Juan Perez, M.D., violated his rights under the Eighth Amendment by providing inadequate medical treatment for his injured knee while he was incarcerated at a prison facility operated by Michigan Department of Corrections (MDOC).[1]  Defendants move for summary judgment, arguing that Worthy's deliberate indifference claims fail as a matter of law.  [ECF

---

[1] MDOC was eliminated as a defendant in Worthy's amended complaint. [ECF No. 13].

1

No. 39]. The Court agrees and **RECOMMENDS** that defendants' motion be **GRANTED**.[2]

## II. FACTUAL BACKGROUND

Worthy claims to have injured his left knee on a wet floor in the Newberry Correctional Facility in September 2016. [ECF No. 41, PageID.156]. He submitted a healthcare request (kite), and was instructed to take Motrin and use warm compresses until his scheduled evaluation. [*Id.*, PageID.155]. At that evaluation, the examining registered nurse noted tenderness of the knee, but no spasms, numbness or swelling. She also reported normal gait and range of motion, and that Worthy sought "an MRI and repair." [*Id.*, PageID.156]. The nurse referred him to a medical provider, Dr. Perez, who saw Worthy in October 2016. Dr. Perez reported that Worthy related a history of arthroscopy of the knee in 2014, refused examination and treatment recommendations, but repeatedly requested an MRI. [*Id.*, PageID.158-159]. Dr. Perez observed Worthy walking normally as he entered the clinic and noted that he walked fast out of the clinic, with no limp. [*Id.*] Dr. Perez wrote that he explained to Worthy that he could not order an MRI without approval from utilization management, and that he would require evidence supporting the medical necessity of the study to

---

[2] The Honorable Laurie J. Michelson referred this case to the undersigned to resolve all pretrial matters under 28 U.S.C. § 636(b). [ECF No. 12].

secure approval. To that end, Dr. Perez indicated he would request the records of his prior knee surgery. [*Id.*]

Two days later, Worthy submitted another kite complaining of knee pain and requesting a brace. He was instructed to do strengthening exercises to improve muscle tone and that MDOC did not issue braces because they were found to do more harm than good. [ECF No. 41, PageID.160]. Worthy was evaluated the following day after he allegedly hit his knee on a cart. [*Id.*, PageID.161]. The examining registered nurse noted that Worthy ambulated smoothly, could sit and raise his leg easily, and exhibited no redness or swelling, and that the knee had full range of motion and was stable. [*Id.*]. After another kite in late October, another nurse evaluated Worthy, and he again demanded a knee brace and an MRI. [*Id.*, PageID.165]. His knee was tender, but exhibited no swelling, numbness, discoloration or spasms. [*Id.*]. Worthy had a normal range of motion and gait, and did not experience pain on bending the left knee. [*Id.*].

Timothy Stallman, D.O., examined Worthy in November 2016, ordered an x-ray of the left knee and prescribed pain medication. [*Id.*, PageID.169]. The x-ray revealed a possible 9mm subcortical medial femoral condyle osteonecrosis and an MRI was recommended. [*Id.*, PageID.175]. The approved MRI revealed grade three degeneration of

cartilage over medial femoral condyle. [*Id.*, PageID.193]. Dr. Perez then requested an orthopedic consult for Worthy, but the consult was denied because medical necessity was not established. [*Id.*, PageID.193-194]. Worthy continued to submit kites complaining of knee pain, requesting surgery and threatening to file grievances and sue MDOC medical personnel. [*Id.*, PageID.196-203]. Dr. Perez's last involvement in Worthy's care was in January 2017, when he told Worthy that the request for an orthopedic consultation was denied. [*Id.*, PageID.196-197].

Worthy completed a physical therapy consult in March 2017. [ECF No. 41, PageID.206]. A physical therapist recommended a hinged knee brace for instability but, because no instability had been documented, the brace was denied in favor of a knee sleeve. [*Id.*, PageID.204]. Worthy received a steroid injection to the knee in December 2017, but reported that it did not reduce his pain. [*Id.*, PageID.212-214]. Victoria Hallett, D.O., examined Worthy and again requested an orthopedic consult. [*Id.*, PageID.214-215].

An orthopedic consult was approved and Worthy was examined in February 2018 at the Henry Ford Center for Athletic Medicine by Albert George, M.D. [*Id.*, PageID.216-220]. Dr. George diagnosed Worthy with primary osteoarthritis of the left knee and created a nonsurgical treatment

4

plan, prescribing non-steroid anti-inflammatories (NSAIDs) for pain management and a home exercise program of physical therapy. [*Id.*, PageID.220]. Worthy was paroled in April 2018. [*Id.*, PageID.222].

After his release from prison, Worthy had an MRI through the VA Healthcare System. The July 2018 MRI showed a prior ACL repair with intact ACL graft, a complex tear of the posterior horn and body of the medial meniscus, a free edge tear of the body of the lateral meniscus, a stable appearing osteochondral abnormality within the weightbearing portion of the medial femoral condyle, free fluid suggestive of a ruptured Baker's cyst and small knee joint effusion. [ECF No. 42, PageID.224].

Worthy consulted with Robert Young, M.D., an orthopedic surgeon in the St. Joseph Mercy Health System who had performed joint arthroplasty on Worthy's relatives. Dr. Young opined that "surgical intervention with operative arthroscopy with partial medial and lateral meniscectomy [was] indicated given the chronicity of his symptoms and the MRI findings, coupled with his physical findings." [ECF No. 43, PageID.233]. But the VA denied Worthy's request for immediate surgery and instead required him to complete conservative treatment with the Physical Medicine and Rehabilitation service, followed by further evaluation with a VA orthopedic specialist. [ECF No. 42, PageID.226]. Dr. Young was an outside

5

consultant. [*Id.*]. In contrast to Dr. Young's recommendation, the orthopedic surgeons at the VA counseled Worthy in January 2019 that a knee arthroscopy with debridement would have limited value in addressing his degenerative meniscal tear and that pain relief from such a procedure would be short-lived. [ECF No. 42, PageID. 225]. They advised him to strengthen his atrophied quads to help with instability and pain, and to follow up in three months. [*Id.*].

### III.   ANALYSIS

#### A.

Defendants move for summary judgment under Federal Rule of Civil Procedure 56(a). Under that rule, "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most

favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**B.**

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 101 (1976) (applicable to the states through the Fourteenth Amendment). Because the government is obliged to provide medical care for those it has incarcerated, "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," and thus violates the Eighth Amendment. *Id.* at 103-104. But mere failure to provide adequate medical care to a prisoner does not violate the constitution. *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). "[A] constitutional violation arises only when the doctor exhibits deliberate indifference to a prisoner's serious illness or injury that can be characterized as obduracy and wantonness rather than inadvertence or" good faith error. *Id.* (citing *Wilson v Seiter*, 501 U.S. 294, 299 (1991) (internal citations and quotation marks omitted).

An inmate must establish both an objective and subjective component to show a deliberate indifference to a serious medical need. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). When an inmate

7

claims that his medical treatment was inadequate, "the objective component…requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (internal citations and quotation marks omitted). The inmate must supply medical proof that the treatment provided was not adequate medical treatment for his condition. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). A desire for additional or different treatment does not suffice; the plaintiff must offer medical evidence to demonstrate the medical necessity for the desired treatment. *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017). "The plaintiff also must place verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment." *Rhinehart*, 894 F.3d at 738 (internal citations and quotation marks omitted).

### 1. Objective Component

This record contains no evidence that the conservative treatment Worthy received was detrimental to the condition of his knee. Both the prison medical personnel and Dr. George, the consulting orthopedic surgeon who examined Worthy in February 2018, recommended non-surgical management for Worthy's degenerative medial meniscus tear. [ECF No. 41, PageID.220-221]. After his release from prison, Worthy's

treating VA orthopedic surgeons counseled that surgery could provide only short-term pain relief and would be of limited value to him. [ECF No. 42, PageID.225]. They too recommended conservative treatment in the form of exercise to strengthen his quadricep muscles for increased stability and decreased pain. [*Id.*].

Although Worthy clearly desired surgery for his injured knee, that desire is not enough to support an Eighth Amendment claim. See *Anthony*, 701 F. App'x, at 464. Worthy argues that early surgical repair would have improved his outcome, but he points to nothing in the record that supports this claim or otherwise establishes the medical necessity of surgery. [ECF No. 48, PageID.243].

In July 2018, Dr. Young did indicate that surgical intervention was appropriate. [ECF No. 43, PageID.233]. But nothing in that report suggests that Worthy's earlier conservative treatment was inappropriate. [*Id.*] Instead, Dr. Young identified the "chronicity of his symptoms," something that could only have been established with the passage of time and alternative treatment, as a primary justification for recommending surgery for Worthy at that time. [*Id.*].

Even if Dr. Young had opined that MDOC doctors should have surgically repair Worthy's knee when he was imprisoned, that would not

mean that the MDOC decision-makers were deliberately indifferent. "A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs." *Acosta v. Naphcare*, No.2:09–cv–1998, 2010 WL 3522356, at *5 (D.Nev.Sept.2, 2010) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989)); *see also Douglas v. Stanwick*, 93 F.Supp.2d 320, 325 (W.D.N.Y.2000). The Court also notes that the orthopedic surgeons at the VA disagreed with Dr. Young's recommendation for surgery. [ECF No. 42, PageID. 225].

The absence of evidence that surgery was medically necessary is fatal to Worthy's claim. *See Wright v. Corizon Health, Inc.*, 16-12113, 2019 WL 2387189, at *1-5 (E.D.Mich. June 6, 2019). Like Worthy, the plaintiff in *Wright* injured his knee in prison, and after a normal x-ray, was treated conservatively. *Id.* Wright was seen repeatedly by medical personnel over the next several months and received conservative treatment, including NSAIDs, physical therapy and home exercises, despite the plaintiff's frequent requests for more aggressive treatment. *Id.* Like Worthy, the plaintiff in *Wright* had an MRI after multiple denied requests, and the results of the MRI prompted the reviewing medical providers to request a consult with an orthopedic surgeon. *Id.* at *4. In *Wright* and this case, the plaintiffs'

initial requests for MRIs were denied, and the plaintiffs had conservative treatment before finally consulting with an orthopedic surgeon. *Id.* at *5. But unlike Worthy, Wright's consulting surgeon recommended surgery, which was performed about 16 months after he injured his knee. *Id.*

Even though Wright's knee injury was eventually treated surgically, the record did not show "that the course of treatment advocated by [p]laintiff would have produced a better outcome." *Id.* at *10.

> Absent medical evidence of the necessity of the alternative treatment sought by [p]laintiff, such that a trier of fact could meaningfully evaluate this desired alternative against the more conservative treatment he actually received, the trier of fact would be left with the impermissible task of 'second guess[ing] medical judgments about the appropriate treatment of [p]laintiff's knee condition.

*Id.* (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The *Wright* court concluded that the record lacked the requisite verifying medical evidence to permit a trier of fact to conclude that the conservative treatment of plaintiff's knee injury was inadequate enough to satisfy the objective prong of the deliberate indifference standard. *Id.*

The same conclusion must be reached here. Like the plaintiff in *Wright*, Worthy did not offer any evidence of the necessity of arthroscopic knee surgery. There was no "expert medical testimony showing the medical necessity for the desired treatment and the inadequacy of the

11

treatments [he] received." *Rhinehart*, 894 F.3d at 737-738 (internal citations and quotation marks omitted). Without such evidence, "demanded under Sixth Circuit precedent," Worthy cannot satisfy the objective component of an Eighth Amendment challenge to the adequacy of his treatment. *Wright*, 2019 WL 2387189, at *10.

### 2. Subjective Component

Even if Worthy could establish the objective prong of a deliberate indifference claim, he would also have to satisfy the subjective component against Dr. Perez. *Rhinehart*, 894 F.3d at 738. "A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state equivalent to criminal recklessness." *Id.* (internal citations and quotation marks omitted).

> A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. . . . Accordingly, when a claimant challenges the adequacy of an inmate's treatment, this Court is deferential to the judgments of medical professionals. . . . [T]here is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have consciously exposed the patient to an excessive risk of serious harm.

*Id.* at 738-739 (internal citations and quotation marks omitted).

In the Sixth Circuit, when "an inmate's physician implements a

12

recognized course of treatment and continues to monitor the inmate's condition, the mere existence of an alternate course of treatment is not indicative of . . . [a] conscious disregard for the inmate's medical needs, as necessary to establish a claim of deliberate indifference." *Wright*, 2019 WL 2387189, at *14 (internal citations and quotation marks omitted). When the record contains evidence that a medical professional's decisions regarding an inmate's treatment fall "comfortably within the boundaries of sound professional judgment," the subjective prong of a deliberate indifference claim fails as a matter of a law. *Id*.

Here, Worthy does not assert, and the evidence does not suggest, that Dr. Perez exposed him to an excessive risk of serious harm or showed a conscious disregard for his medical needs. In fact, Worthy does not identify any decision by Dr. Perez which favored conservative treatment over the surgery Worthy wanted. The Court's review of the evidence shows that Dr. Perez requested Worthy's 2014 surgical records and ordered both an MRI and an orthopedic consult. [ECF No. 41, PageID.159, 178, 193]. Dr. Perez also instructed Worthy to take the NSAID of his choice while he awaited approval for diagnostic studies. [*Id*, PageID.167]. On this record, Worthy cannot establish the subjective prong of a deliberate indifference claim against Dr. Perez. Because Worthy can establish

13

neither the objective or subjective prong of a deliberate indifference claim, Perez's motion for summary judgment should be granted.

## C.

Worthy also asserts a deliberate indifference claim against Corizon for employing Dr. Perez, who Worthy calls an "unqualified physician." [ECF No. 13, PageID.27]. Private corporations like Corizon that perform the traditional state function of providing medical services to prison inmates may be sued under § 1983. *Rouster v. Saginaw County*, 749 F.3d 437, 453 (6th Cir. 2014). But "private corporations cannot be held liable on the basis of respondeat superior or vicarious liability." *Id.* Liability will attach only if a custom, policy or practice attributable to the corporation "was the moving force behind the violation of plaintiff's constitutional rights." *Heyerman v. Calhoun County*, 690 F.3d 642, 648 (6th Cir. 2012) (internal citations and quotation marks omitted). To show that Corizon is liable, Worthy must allege and prove a direct causal connection between Corizon's policies or customs and his constitutional injury. *Gray v City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005). Worthy does not meet this burden.

Even if the Court charitably construed Worthy's allegation against Corizon as asserting a failure to train and supervise Dr. Perez, Worthy has

14

failed to "set forth any facts that there were prior instances of similar misconduct so as to show that [Corizon] was on notice that its training and supervision with respect to . . . medical treatment was deficient." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). For these reasons, Worthy's claim against Corizon fails as a matter of law and its motion for summary judgment should be granted.

## IV. CONCLUSION

Defendants' motion for summary judgment [ECF No. 39] should be **GRANTED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 24, 2020

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF

16

System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2020.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager