UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID WORTHY,

    Plaintiff,

v.

CORIZON MEDICAL GROUP, *et al.*,

    Defendants.

Case No. 18-12451
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

---

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [51]
AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [39]**

---

While David Worthy was incarcerated, he was injured and began to experience persistent pain in his left knee. Worthy submitted numerous complaints about the pain. Members of the prison health care team, including Dr. Juan Perez, performed a number of diagnostic tests and treated Worthy with painkillers, a knee brace, and recommendations for strengthening exercises. After Worthy was released from prison, he consulted with an orthopedic surgeon who diagnosed a tear in Worthy's meniscus.

Worthy brought this suit alleging a violation of his constitutional right to adequate medical care under the Eighth Amendment. Defendants Corizon Medical Group and Perez subsequently moved for summary judgment. Magistrate Judge Elizabeth A. Stafford recommends that the Court grant the motion for summary judgment. Worthy objects. The Court overrules Worthy's objections and fully adopts the Report and Recommendation.

I.

Worthy injured his left knee on a wet floor while incarcerated in the Newberry Correctional Facility in September 2016. (ECF No. 41, PageID.156.) Worthy was examined by a nurse and then

referred to Dr. Perez. (ECF No. 41, PageID.157.) At his appointment in October 2016, Perez reported that Worthy was uncooperative. He continually insisted on an MRI and refused other treatment recommendations. (ECF No. 41, PageID.158–159.) Perez's notes indicate that he could not order an MRI without demonstrated medical necessity and approval from management. (*Id.* at PageID.158.) Perez requested medical records from Worthy's ACL surgery to help evaluate medical necessity. (*Id.*) Perez also noted that he observed Worthy walking completely normally before and after the appointment. (*Id.*)

Worthy's knee pain persisted. Two days later, Worthy submitted a health care request for a knee brace. (ECF No. 41, PageID.160.) A nurse responded that the Michigan Department of Corrections (MDOC) "does not issue knee braces—it is found that they do more damage than good" and recommended strengthening exercises instead. (*Id.*) The next day, Worthy hit his knee and was evaluated by a nurse who found no issues with the knee. (*Id.* at PageID.161.) Later that month, Worthy was again examined by a nurse who noted tenderness in the knee, but no swelling, numbness, discoloration, or spasms, and found Worthy had a normal range of motion and gait. (*Id.* at PageID.165.)

Timothy Stallman, D.O., examined Worthy in November 2016, ordered an x-ray, and prescribed new pain medication. (*Id.* at PageID.168–169.) The X-ray showed a "possible 9mm subcortical medial femoral condyle osteonecrosis" and he recommended an MRI. (*Id.* at PageID.175.) The MRI was performed in January 2017 and found the ACL repair was intact, but there was grade 3 degeneration of cartilage and a cluster of cysts. (*Id.* at PageID.189, 191.)

Upon reviewing the MRI results, Perez requested an orthopedic consult for Worthy, but the utilization management director denied the request. (*Id.* at PageID.196.) When Perez explained

2

to Worthy that the request was denied, Worthy "was upset and started to argue." (*Id.*) This was the last time Perez met with Worthy.

In March 2017, Worthy had a physical therapy consult. (*Id.* at PageID.204.) The physical therapist recommended a hinged knee brace, but MDOC rejected the brace in favor of a knee sleeve. (*Id.*)

Worthy visited health services again in June and September of 2017 and was given additional pain medication and a recommendation for strengthening exercises. (*Id.* at PageID.205–208.) Worthy again requested to see an orthopedic specialist, but the physician's assistant noted this request had already been denied twice. (*Id.* at PageID.208.) The PA requested a knee brace for Worthy, but MDOC denied it again, citing MDOC guidelines which "indicate that an ACL tear with instability needs to be present in order to obtain an ACL brace." (*Id.* at PageID.209.)

In December 2017, Worthy was given a steroid injection by Victoria Hallett, D.O. (*Id.* at PageID.212.) When Worthy met with Hallett again the following month, he reported that the injection did not work. (*Id.* at PageID.214.) Hallett submitted another referral to orthopedics. (*Id.* at PageID.215.)

An orthopedic consult was approved and Worthy was examined at the Henry Ford Center for Athletic Medicine. (*Id.* at PageID.218.) The doctor diagnosed Worthy with primary osteoarthritis of the left knee. (*Id.* at PageID.220.) The doctor noted that he discussed surgical and non-surgical treatment options with Worthy and they agreed upon a non-operative management plan of pain medication and home exercises at that time. (*Id.* at PageID.220.)

Worthy was paroled and released from prison in April 2018. (*Id.* at PageID.222.)

After his release, in July 2018, Worthy got an MRI through the VA Healthcare System. (ECF No. 42, PageID.223.) The MRI showed that the ACL repair was still intact but there were

3

tears in the left meniscus, an osteochondral abnormality in the medial femoral condyle, free fluid in a tendon, and a small knee joint effusion. (*Id.* at PageID.224.)

Worthy consulted with another orthopedic surgeon, Robert Young, M.D., at St. Joseph Mercy Chelsea in July 2018. (ECF No. 42, PageID.231.) Dr. Young found that knee-replacement surgery was not appropriate, but he suggested an elective operative arthroscopy with partial medial and lateral meniscectomy "given the chronicity of his symptoms and the MRI findings, coupled with his physical findings." (*Id.* at PageID.233.)

In November 2018, Worthy had a follow-up appointment at the VA. (ECF No. 42, PageID.226.) Worthy expressed anger that he was being denied surgical options by the VA, but the doctor explained that the VA was not definitively denying surgery but wanted Worthy to try more conservative measures first. (*Id.*)

At an appointment at the VA in January 2019 with a different doctor, the doctor counseled that a knee arthroscopy would have limited value and "pain relief would be short-lived" and instead suggested strengthening his quads and a follow-up in three months. (*Id.* at PageID.225.)

The record also indicates that Worthy had a follow-up appointment at the VA with Resident Physician Gadini Delisca in January 2020. Dr. Delisca advised Worthy "that in order to improve his stability he would need a revision ACL reconstruction with b/l semitendonosis allograft." (ECF No. 52, PageID.294.) Delisca noted this would be "a very big procedure" requiring dedicated post-operative rehabilitation and that Worthy would need to reduce his smoking in order to be a

4

candidate for this surgery. (*Id.*) Worthy indicated to Delisca that he would think about whether he wanted to undergo revision surgery. (*Id.*)

Worthy filed this lawsuit against MDOC in 2018. (ECF No. 1.) He then filed an amended complaint removing MDOC as a defendant and instead naming "Corizon Med Group,[1] Mr. Coleman, Mary J. Howard, Dr. Perez." (ECF No. 13, PageID.19.) The summonses for Coleman and Howard were returned unexecuted. The matter was referred to Magistrate Judge Stafford for all pretrial matters. (ECF No. 12.) Corizon Medical Group and Dr. Perez subsequently moved for summary judgment. (ECF No. 39.) Magistrate Judge Stafford issued a Report and Recommendation finding that Worthy's deliberate indifference claim fails as a matter of law and recommending Defendants' motion be granted. (ECF No. 51.)

## II.

The Court performs a de novo review of those portions of the Magistrate Judge's Report and Recommendation to which Worthy has objected. *See* 28 U.S.C. § 636(b); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). The Court need not and does not perform a de novo review of the report's unobjected-to findings. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012).

When considering a motion for summary judgment, the Court views all facts and inferences in the light most favorable to the non-moving party, Worthy. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451–52 (6th Cir.

---

[1] Corizon Medical Group is the company that provides healthcare services in the prison.

2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019) (internal citations omitted).

### III.

Worthy filed an objection to Magistrate Judge Stafford's Report and Recommendation. The Court interprets his objections as follows: (1) the Court should apply a medical malpractice negligence standard to his claim, (2) Perez's error and/or delay in diagnosing Worthy was negligent, (3) evidence presented of the orthopedic surgery consult "clearly states proper medical attention was not rendered at the time of injury." (ECF No. 52, PageID.290.)

As an initial matter, Worthy's insistence that the Court should apply a medical malpractice negligence standard is clearly wrong. A claim of inadequate medical care by a prisoner under the Eighth Amendment is evaluated under the standard of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994)).

The Sixth Circuit has made clear that "[n]either negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient for the purpose of a deliberate indifference claim." *Rhinehart v. Scutt*, 509 F. App'x 510, 513 (6th Cir. 2013) (citing *Estelle*, 429 U.S. at 106; *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995)); *see also Vinson v. Michigan Dep't of Corrs.*, 788 F. App'x 312, 316 (6th Cir. 2019) ("Mere negligence in identifying

6

or treating a medical need does not rise to the level of an Eighth Amendment violation." (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001))).

With that standard in mind, it is clear that Worthy's claims of error or delay in diagnosis cannot reach the threshold of deliberate indifference. "Allegations that more should have been done by way of diagnosis and treatment and suggest[ions] of other options that were not pursued raise at most a claim of medical malpractice, not a cognizable Eighth Amendment claim." *Rhinehart*, 894 F.3d at 741 (citing *Estelle*, 429 U.S. at 107) (internal citations omitted).

Finally, Worthy's claim that his orthopedic surgery consultation "clearly states proper medical attention was not rendered at the time of injury" is not supported by the record. It is unclear whether Worthy is referring to his consultation with Dr. Young or his appointments with the orthopedic surgery physicians at the VA. Regardless, a review of all of Worthy's medical records reveals no support for Worthy's claim.

Take first Dr. Young's records. Dr. Young was the only doctor to recommend a treatment plan materially different from that suggested by Dr. Perez. And Young offered surgery as an elective option because the symptoms were chronic and gave no indication that Worthy had received improper medical attention for his knee condition. (*See* ECF No. 43.) So Young's records do not support Worthy's claim that Perez was deliberately indifferent.

And if Worthy intended to refer to the new records he submitted along with his objection, those too do not support a finding of deliberate indifference. In those records, Dr. Delisca stated that Worthy could be a candidate for a revision ACL reconstruction surgery. (ECF No. 52, PageID.294.) But Delisca noted that Worthy would need to cut down on his smoking before he could be a candidate for the surgery and that Worthy needed to consider whether he was prepared for the major postoperative rehabilitation that the surgery would require. (*Id.*) Delisca did not make

any statement about the quality of treatment of the knee pain by past doctors. So the Court is not persuaded by Worthy's objection about improper medical attention.

## IV.

Because Worthy's objections (ECF Nos. 52, 53) are without merit, they are OVERRULED. The Magistrate Judge's Report and Recommendation (ECF No. 51) is ADOPTED and the Defendants' motion for summary judgment (ECF No. 39) is GRANTED.

SO ORDERED.

Dated: February 24, 2020

> s/Laurie J. Michelson
> LAURIE J. MICHELSON
> UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 24, 2020.

> s/Erica Karhoff
> Case Manager to
> Honorable Laurie J. Michelson